FILED
04/08/2022
Molly Bradberry
CLERK
Park County District Court
STATE OF MONTANA
By: Molly Bradberry
DV-34-2022-0000051-DQ
Gilbert, Brenda
1.00

Kevin S. Brown
**PAOLI & BROWN, P.C.**
116 West Callender St.
Livingston, MT 59047
Tel.: 406-222-4420
Fax: 406-222-1032
kevin@paolibrown.com

Rebecca R. Swandal
**SWANDAL LAW PLLC**
305 East Lewis Street
Livingston, MT 59047
Tel: 406-222-3301
swandal.law@gmail.com

Attorneys for Plaintiff

**MONTANA SIXTH JUDICIAL DISTRICT COURT**
**PARK COUNTY**

| | |
|---|---|
| KELDAH ELIZABETH HEDSTROM,<br><br>  Plaintiff,<br><br>-vs.-<br><br>PEGGY ALBEE,<br><br>  Defendant. | Cause No.: DV-34-2022-0000051-DQ<br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW the Plaintiff, Keldah Elizabeth Hedstrom, by and through her attorneys of

record, Kevin S. Brown and Rebecca R. Swandal, and complains and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. At all times pertinent hereto, Plaintiff Keldah Hedstrom was a resident of the Montana

Sixth Judicial District.

2. Upon information and belief, Defendant Peggy Albee is a resident of Fergus County,

Montana.

3. The conduct complained of herein occurred in the Montana Sixth Judicial District.

COMPLAINT AND JURY DEMAND - 1

4. As such, this Court has jurisdiction over the parties and the matters alleged herein.

**GENERAL ALLEGATIONS**

5. On or about August 10, 2020, Keldah's estranged husband, Cody Peters, broke one of her windows, unlawfully entered her home, and lay in wait for her to return to home.

6. When Keldah returned to her residence the next morning with her stepfather and three year-old son, they were confronted by Cody Peters, who pointed a gun at them and stated, "You're fucking dead." Cody forced a terrified Keldah lie down on the floor. At one point during the assault, Cody pointed the gun at Keldah's head and informed her that he "wanted to end it." Fortunately, Keldah's stepfather was ultimately able to talk Cody out of murdering him, his stepdaughter, and her child.

7. Shortly thereafter, Cody was arrested and charged with numerous felonies, including Aggravated Burglary, Aggravated Kidnapping, and Assault with a Weapon.

8. On or about July 19, 2021, Defendant Peggy Albee authored a letter to Sweet Grass County Attorney Pat Dringman (attached hereto as **Exhibit 1**), wherein she falsely and libelously claimed that Keldah was not the victim in this scenario, but had in fact "strategically planned and carried out all the events" leading up to Cody's attack on her, her stepfather, and her child. *See* **Exhibit** 1 at 5. Within that same letter, the Defendant falsely claimed that Keldah "withheld [Cody's] son from him." *Id.* Defendant further falsely asserted that, "with the level of stress [that Keldah] created for [Cody] over their [five-plus] year marriage, it does not come as a surprise that [Cody] became exhausted from all of her games." *Ibid.*

9. Peggy further described the man who held a loaded gun with a chambered bullet to Keldah's head in front of their three-year-old child as follows: "[Cody] is a good man who was

COMPLAINT AND JURY DEMAND - 2

manipulated and exploited by [Keldah] (as was the Court) in an effort to destroy him financially [and] emotionally, and, most importantly, to keep his son away from him." *Id.* at 2

10. Peggy's letter further accused Keldah of the "deliberate destruction of [Cody's] father-son child relationship" with their three-year-old (the same child who was forced to witness his father holding a gun to his mother's head while telling everyone present, "You're fucking dead."). *Id.* at 2. Peggy even falsely claimed that, "[f]rom a 'community safety' perspective, [Keldah] is a much more dangerous individual than Mr. Peters could ever imagine being." *Ibid.*

11. Despite never having met or treated Keldah, Defendant then falsely diagnosed her with Antisocial Personality Disorder, as that term is defined by the DSM-V. *Id.* at 1-3.

12. Ms. Albee's libelous letter was subsequently disseminated and publicly filed as an exhibit in Montana Sixth Judicial District Court Cause No. DC 2020-11.

13. Cody Peters subsequently pleaded guilty to two counts of Felony Assault with a Weapon, and, on November 10, 2021 was sentenced to 10 years imprisonment, with nine years suspended.

## COUNT I—DEFAMATION

14. Plaintiff restates and reincorporates ¶¶ 1-13 as though fully set forth herein.

15. Defendant's statements concerning Keldah contained within the attached **Exhibit 1** were false and unprivileged.

16. The statements about Keldah contained within the attached **Exhibit 1** expose her to hatred, contempt, ridicule, obloquy, and would have a tendency to cause her to be shunned, avoided, and/or have a tendency to injure her in her occupation.

17. The false and defamatory statements contained within the attached **Exhibit 1** constitute both defamation and defamation per se.

COMPLAINT AND JURY DEMAND - 3

18. As a direct and proximate result of the Defendant's conduct as described herein, Keldah suffered emotional distress, and other damages in an amount to be proven at trial.

### COUNT II—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

19. Plaintiff restates and reincorporates ¶¶ 1-18 as though fully set forth herein.

20. Through the above-described conduct, Defendant intentionally re-victimized Keldah and caused her serious emotional distress.

21. The emotional distress suffered by Keldah was a reasonably foreseeable consequence of having a licensed clinical professional counselor publicly accuse a victim of a violent crime of having "strategically planned," "manipulated," "exploited," and/or otherwise brought about or have been to blame for having a loaded gun put to her head in front of her three-year-old son. Likewise, emotional distress was a reasonably foreseeable consequence of having a licensed clinical professional counselor who has never met or treated a crime victim publicly accuse her of having "Antisocial Personality Disorder."

22. As a direct and proximate result of the Defendant's conduct as described herein, Keldah suffered emotional distress and suffered injuries and damages in an amount to be proven at trial.

### COUNT III—NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

23. Plaintiff restates and reincorporates ¶¶ 1-22 as though fully set forth herein.

24. Through the above-described conduct, the Defendant negligently re-victimized Keldah and caused her serious emotional distress.

25. The emotional distress suffered by Keldah was a reasonably foreseeable consequence of having a licensed clinical professional counselor publicly accuse a victim of a violent crime of having "strategically planned," "manipulated," "exploited," and/or otherwise brought about or

have been to blame for having a loaded gun put to her head in front of her three-year-old son. Likewise, emotional distress was a reasonably foreseeable consequence of having a licensed clinical professional counselor who has never met or treated a crime victim publicly accuse her of having "Antisocial Personality Disorder."

26. As a direct and proximate result of the Defendant's conduct as described herein, Keldah suffered emotional distress and suffered injuries and damages in an amount to be proven at trial.

### COUNT IV—PUNITIVE DAMAGES

27. Plaintiff restates and reincorporates ¶¶ 1-26 as though fully set forth herein.

28. Pursuant to § 27-1-221, MCA, an award of punitive damages is appropriate in situations where the Defendant acts with actual malice.

29. Here, the Defendant knew or should have known that falsely accusing a victim of a violent crime whom she had never met or treated of the accusations set forth in her letter to Mr. Dringman would create a high probability of re-victimizing and/or causing distress and emotional harm to said person.

30. Here, the Defendant deliberately proceeded to act in conscious or intentional disregard of or indifference to the high probability of injury to Keldah when she authored the libelous letter to Mr. Dringman.

31. As a result of Defendant's actual malice, Keldah was damaged in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff prays as follows:

1. For judgment against Defendant in an amount to be proven at trial;

COMPLAINT AND JURY DEMAND - 5

2. For an award of all compensatory, punitive, general, and special damages recoverable under Montana law; and

3. For all such other and further relief as the Court may deem just and proper, including costs of suit.

DATED this __8__ day of __April__, 2022

PAOLI & BROWN, P.C.

_____
Kevin S. Brown, Esq.

## DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Keldah Hedstrom, by and through her attorney of record, and hereby demands trial by jury as to all triable issues herein.

DATED this __8__ day of __April__, 2022.

PAOLI & BROWN, P.C.

_____
Kevin S. Brown, Esq.

COMPLAINT AND JURY DEMAND - 6



**505 West Main Street, Suite 316, Lewistown, MT  59457-5703**
p: 406.366.4134  f: 406.538.3283  e: aspenacs@yahoo.com  web: aspenacs.com

July 19, 2021

Sweet Grass County Attorney
Attention:  Patrick Dringman
200 West First Avenue
P.O. Box 1188
Big Timber, MT  59011

Re:   Cody C. Peters

Dear Mr. Dringman,

This letter is written out of concern regarding the Cody C. Peters' case and upcoming sentencing hearing on Wednesday, July 21, 2021. Over the past 15 years I have been involved in numerous criminal and family court cases but Mr. Peters' case is certainly a "first" for me.

I have been in Court with Judge Gilbert on previous occasions for CFS cases as well as drug-related revocation hearings and at no time has she ever been disrespectful toward me or others in the Courtroom. During the June 30, 2021 hearing, her demeanor was entirely different and it appeared that any testimony presented on behalf of Mr. Peters was immediately discounted however, anything (fact or fiction) from Ms. Swandal was admissible. Regardless of what was presented by Ms. Rebsom, a decision in Ms. Swandal's favor had already been made. I'm not sure how that reflects "fair and just treatment".

It appeared that Judge McElyea had also made a premature decision when Ms. Rebsom was told by her clerk that Mr. Peters would be "in custody" at the time of the original sentencing hearing on June 10, 2021. According to Ms. Rebsom, her only option was to request a different Judge through the Supreme Court. Unfortunately, that request was denied placing Mr. Peters and his attorney back in front of Judge McElyea. I'm at a loss to understand how that can be impartial.

Since February 2021, when Mr. Peters contacted this office, I have spent many hours speaking with him and while I agree (as does he) that some of his behavior over the past year or so has been less than stellar, I believe Ms. Hedstrom strategically planned and carried out all the "events" leading up to August 2020 including withholding Mr. Peters' son from him. Interestingly, her behaviors are all characteristics of Antisocial Personality Disorder (APD; per DSM-5* see below). With the level of stress Ms. Hedstrom created for Mr. Peters over their 5+ year marriage, it does not come as a surprise that Mr. Peters became exhausted from all of her games. Rather than succumb to his grief and loss over his situation and especially regarding his young son he took a very positive approach and worked hard on himself. He stopped consuming alcohol, worked on developing healthy coping strategies, attended inpatient and

PLAINTIFF'S EXHIBIT 1

outpatient treatment and continued to pay child support even though he has not seen his son since August 2020. Additionally, Mr. Peters has had no violations (positive results) while on the compliance monitoring system (Soberlink) nor has he violated the restrictions of his GPS ankle bracelet. What I find most telling about Mr. Peters' last year is that he has never violated the terms or conditions of the No Contact Order by trying to contact his young son – even on Christmas and his birthday. I have had numerous clients with No Contact Orders who violate the conditions for much lesser reasons. Mr. Peters has followed all expectations and conditions as established by the Court only to have his hard work and determination to improve his life brushed aside like it doesn't matter.

I work with the criminal population on a daily basis and Mr. Peters does not fit that mold. He is *not* a threat to the community as evidenced by this past year and years prior to 2020. Mr. Peters is a good man who was manipulated and exploited by Ms. Hedstrom (as was the Court) in an effort to destroy him financially, emotionally and most importantly to keep his son away from him. I have always held the highest regard for the Judicial system, but this case has made me question if Mr. Peters can actually be treated "fairly and justly" when there seems to be no concern for the APD traits demonstrated by Ms. Hedstrom and the collateral damage she has caused including the deliberate destruction of Mr. Peters' father-son relationship. From a "community safety" perspective, Ms. Hedstrom is a much more dangerous individual than Mr. Peters could ever imagine being.

Prison is for individuals who pose a threat to society and need to be "housed" in a secure setting to reduce the risk to the community. Mr. Peters does not pose such a threat. He has had plenty of opportunities over the past year to be non-compliant but he has followed every rule and expectation without fail... only to be "failed" by the judicial system. A more productive option for Mr. Peters than prison is for him to continue with outpatient treatment, supervision through Adult Probation and Parole and maintain his business so he can continue to be a contributing member of his community. There is nothing to be gained by sending Mr. Peters to prison.

Thank you in advance for your time and consideration.


Regards,



Peggy A. Albee, LCPC, LAC, NCAC-1, SAP, CRC, MHPP, CART
Licensed Clinical Professional Counselor
Licensed Addiction Counselor
National Certified Addiction Counselor
Substance Abuse Professional
Certified Rehabilitation Counselor
Mental Health Professional Person
Certified Anger Resolution Therapist


*"APD (Antisocial Personality Disorder) is a DSM-5 (Diagnostic and Statistical Manual of Mental Disorders, fifth edition), diagnosis assigned to individuals who habitually and pervasively

disregard or violate the rights and considerations of others without remorse. People with Antisocial Personality Disorder may be habitual criminals, or engage in behavior which would be grounds for criminal arrest and prosecution, or they may engage in behaviors which skirt the edges of the law, or manipulate and hurt others in non-criminal ways which are widely regarded as unethical, immoral, irresponsible, or in violation of social norms and expectations. Those with APD often possess an impaired moral conscience and make decisions driven purely by their own desires without considering the needs or negative effects of their actions on others. Impulsive and criminal behavior is common. The terms psychopathy or sociopathy are also used, in some contexts synonymously, in others, sociopath is differentiated from a psychopath, in that a sociopathy is rooted in environmental causes, while psychopathy is genetically based.

Individuals with Antisocial Personality Disorder tend to be charismatic, attractive, and very good at obtaining sympathy from others; for example, describing themselves as the victim of injustice. Some studies suggest that the average intelligence of antisocials is higher than the norm. Antisocials possess a superficial charm, they can be thoughtful and cunning, and have an intuitive ability to rapidly observe and analyze others, determine their needs and preferences, and present it in a manner to facilitate manipulation and exploitation. They are able to harm and use other people in this manner, without remorse, guilt, shame or regret."